IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **KAISER GROUP** | ) | |
| **INTERNATIONAL, INC. et al.,** | ) | **Case No. 00-2263 (MFW)** |
| | ) | |
| Debtors. | ) | **(Jointly Administered)** |
| | ) | |
| **KAISER GROUP INTERNATIONAL,** | ) | |
| **INC. et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Adv. No. 01-928** |
| | ) | |
| **NOVA HUT, a.s. and** | ) | |
| **INTERNATIONAL FINANCE** | ) | |
| **CORPORATION,** | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT INTERNATIONAL FINANCE CORPORATION'S
OPPOSITION TO DEBTORS' MOTION IN SUPPORT OF APPEAL OR
GRANTING LEAVE TO APPEAL OF DEBTORS' MOTION FOR AN ORDER
PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004,
OR ALTERNATIVELY A BILL OF EQUITABLE DISCOVERY**

Defendant International Finance Corporation (the "IFC"), by counsel, hereby

objects to Debtors' Motion in Support of Appeal or Granting Leave to Appeal of

Debtors' Motion for an Order Pursuant to Federal Rule of Bankruptcy Procedure 2004, or

Alternatively a Bill of Equitable Discovery, Directing Examination of, and Production of

Documents by the International Finance Corporation, Nova Hut, and Related Parties (the

"Motion to Appeal").

## Introduction

Nowhere in the twenty-three pages of the Motion to Appeal do Plaintiffs disclose a fact that by itself disposes of their motion: proceedings against the IFC are currently stayed. The Bankruptcy Court's June 29, 2005 Order mandated arbitration of Plaintiffs' claims against the IFC and stayed these proceedings. Without moving to lift that stay, Plaintiffs filed a motion for unlimited discovery of the IFC (the "Discovery Motion"), thereby seeking to circumvent both the stay and the discovery procedures of the arbitration mandated by the Bankruptcy Court. The Bankruptcy Court denied Plaintiffs' Discovery Motion. Plaintiffs now perpetuate their disregard of the stay of these proceedings by seeking to appeal the Bankruptcy Court's decision. For this reason and the reasons set forth below, Plaintiffs' Motion to Appeal should be denied.

## Factual Background

Beginning on May 16, 2001, Plaintiffs filed four complaints (the original complaint and three amended complaints) against Nova Hut a.s., k/n/a Mittal Steel Ostrava, a.s. ("Nova Hut") and the IFC. The complaints arise out of a 1997 Design and Construction Agreement ("Construction Agreement") between Nova Hut and Kaiser Netherlands, a non-debtor subsidiary of Debtor Kaiser International, under which Kaiser Netherlands was to construct a steel mill for Nova Hut in the Czech Republic. At the heart of Plaintiffs' claims against Nova Hut and the IFC was a dispute between Nova Hut and non-debtor Kaiser Netherlands as to whether the steel mill passed a performance test required by the Construction Agreement.

The Construction Agreement requires that any disputes relating to the Agreement be arbitrated in Vienna, Austria, under Austrian law. In light of the arbitration

2

requirement of the Construction Agreement, and because Plaintiffs' claims arise out of that Agreement, Nova Hut and the IFC separately moved to stay Plaintiffs' claims pending arbitration.

Meanwhile, on January 2, 2004, pursuant to the arbitration clause of the Construction Agreement, Kaiser Netherlands filed for arbitration against Nova Hut in Vienna, Austria before the International Chamber of Commerce's International Court of Arbitration, alleging substantially the same claims that Plaintiffs allege here (the "Vienna Arbitration").

On March 18, 2004, the United States District Court for the District of Delaware ruled that the proceedings as to the claims against Nova Hut should be stayed pending mandatory arbitration. *See* Kaiser Group Int'l, Inc. v. Nova Hut a.s. (In re Kaiser Group Int'l, Inc.), 307 B.R. 449 (D. Del. 2004). Plaintiffs did not initiate arbitration against Nova Hut, but instead decided to allow Kaiser Netherlands to arbitrate the dispute against Nova Hut in Austria.

On May 26, 2005, the Bankruptcy Court heard argument regarding the IFC's renewed motion to stay pending mandatory arbitration. On the agenda for the May 26, 2005 hearing of the IFC's motion to stay, Plaintiffs also included a motion to proceed with discovery.[1] At the outset of the hearing, Plaintiffs recommended that the Court should hear argument regarding the motion to stay prior to the motion for discovery "because, obviously if [the Court] rules in IFC's favor, that will likely moot out" Plaintiffs' motion to proceed with discovery.[2]

---

[1] *See* Exhibit 1, Amended Notice of Agenda of Matters Scheduled for hearing on Thursday, May 26, 2005 at 2:00 P.M.
[2] *See* Exhibit 2, Transcript of May 26, 2005 Hearing, p. 3.

After hearing argument on the motion to stay, the Bankruptcy Court determined that it would enter a stay and mandate arbitration. The Court instructed:

> [E]ither the parties will start their arbitration now . . . and stay that arbitration while the Austrian issues get litigated, or the parties will participate in the Austrian arbitration themselves as to those claims. But I don't think that is for me to decide. I think it's better that I simply stay this proceeding pending arbitration and let the parties work out where and when that arbitration occurs. I think to do otherwise would be a waste of judicial resources.[3]

After the Court ruled that Plaintiffs' claims against the IFC should be stayed pending mandatory arbitration, Plaintiffs again confirmed: "Obviously, in light of Your Honor's ruling, we don't need to address the discovery matters."[4]

Subsequent to the hearing, the Bankruptcy Court entered an Order staying Plaintiffs' claims against the IFC and mandating arbitration of those claims (the "Stay Order").[5] Plaintiffs did not initiate arbitration against the IFC, but instead allowed Kaiser Netherlands to arbitrate the underlying dispute in the Vienna Arbitration.

On or about May 16, 2006, the ICC issued the final award in the Vienna Arbitration.[6] The award, which was over 300 pages in length, included a thorough discussion and rejection of the same arguments that Plaintiffs repeat in their Discovery Motion and their Motion to Appeal. The panel concluded that Kaiser Netherlands had failed the performance test. In light of the arbitration award, on December 13, 2006, Nova Hut moved that the Bankruptcy Court lift the stay of proceedings against Nova Hut and enter summary judgment on the grounds of *res judicata* and collateral estoppel.

---

[3] *See* Exhibit 3, Transcript of May 26, 2005 Hearing, p. 59.
[4] Id. This admission was, of course, a correct statement of the law.
[5] *See* Exhibit 4, Order Granting Defendant International Finance Corporation's Renewed Motion to Stay Further Proceedings Pending Arbitration, dated June 29, 2005.
[6] A copy of the final award is attached to Nova Hut's opposition to the Motion to Appeal.

4

On January 25, 2007, Plaintiffs filed their opposition to Nova Hut's summary judgment motion. Also on January 25, 2007, Plaintiffs filed their Discovery Motion, seeking an order authorizing Plaintiffs to conduct discovery. Plaintiffs did not and still have not moved to lift the stay of the proceedings against the IFC.

### The Discovery Motion

Broadly, Plaintiffs' Discovery Motion sought two categories of information: (1) information relating to future arbitrations Plaintiffs state that they intend to bring against Nova Hut and the IFC; and (2) information relating to a past arbitration between Kaiser Netherlands and Nova Hut that concluded in late 2005.

Plaintiffs' Discovery Motion was based on groundless allegations of a multi-party international conspiracy to fix the Vienna Arbitration. Discovery Motion at 2, 4, 6, 17, 23, 26, and 31. These allegations were not merely false, but so outrageous that they prompted Nova Hut to seek sanctions against Plaintiffs' counsel.

In particular, Plaintiffs argued that "the most damning evidence" regarding the purportedly "tainted" arbitration was a "press release" on the website of Cleary Gottlieb, who represented Nova Hut in the Vienna Arbitration, which Plaintiffs argued showed that Nova Hut had notice of the award before its release. Yet, as Plaintiffs knew at the time, this was not actually the case. In fact, Cleary Gottleib informed Plaintiffs' counsel of the falsity of Plaintiffs' allegations several months before Plaintiffs filed their Discovery Motion premised upon those very allegations.

At an April 25, 2007 hearing, the Bankruptcy Court heard argument regarding Plaintiffs' Discovery Motion. The Court concluded:

> I think I must deny the Motion for Discovery. I think that
> in some respects the arguments are similar to the arguments

that were made in connection with the Motions to Stay the Adversary Proceedings. And for the reasons I and the District Court decided those motions, I'm going to also decline to extend the right of the Debtor to conduct discovery under either Rule 2004 or an Equitable Bill of Discovery. I think that as stated in my prior decision, the parties generically agreed to arbitration and that any claims under the contract should go to arbitration. I think the parties are bound by the rules of the arbitral proceeding, and therefore, the ICC rules will apply.[7]

On May 31, 2007, the Bankruptcy Court entered its order denying the Discovery Motion (the "Discovery Order"). It is from that Discovery Order that Plaintiffs seek to appeal.

## Argument

### I.    LIKE PLAINTIFFS' DISCOVERY MOTION, PLAINTIFFS' MOTION TO APPEAL VIOLATES THE BANKRUPTCY COURT'S STAY ORDER.

"Where an action has been stayed pending arbitration, a [trial] court may not permit the parties to conduct discovery under the Federal Rules of Civil Procedure." Corpman v. Prudential-Bache Sec., Inc., 907 F.2d 29, 31 (3d Cir. 1990). Therefore, so long as the June 29, 2005 Stay Order remains effective, neither Plaintiffs nor the IFC may conduct discovery in the Bankruptcy Court.

Nonetheless, on January 25, 2007, Plaintiffs filed their Discovery Motion seeking broad discovery from the IFC. Inexplicably, the Plaintiffs did so without seeking to vacate the Stay Order. Because the stay remains in place, Plaintiffs' Discovery Motion

---

[7] See Exhibit 5, Transcript of April 25, 2007 Hearing, pp. 38-39. Given the clarity of the Bankruptcy Court's ruling, and the fact that the ruling explicitly addressed Plaintiffs' request for an equitable bill of discovery, it is difficult to understand Plaintiffs' contention that "[t]he Court did not really rule on the Discovery Motion itself and did not even mention the alternative request for an equitable bill of discovery . . ". Motion to Appeal at 5.

6

itself and their attempt to appeal constitute continuing violations of the Stay Order. For that reason alone, Plaintiffs' Motion to Appeal should be denied.

Under the Federal Arbitration Act, except in limited circumstances not present here, an order granting a stay pending arbitration is not subject to appeal. 9 U.S.C. § 16(b)(1); Brown v. Pac. Life Ins. Co., 462 F.3d 384, 390 (5th Cir. 2006) ("Section 16(b) of the FAA forbids appeals of interlocutory orders granting a stay under section 3 . . . ."). Therefore, when the Bankruptcy Court ordered a stay of these proceedings, Plaintiffs could not, and did not, appeal the Stay Order.

Just as Plaintiffs were not permitted to appeal the Stay Order at the time it was issued, they are not permitted to appeal that Order now. Likewise, they may not appeal an order denying a motion that seeks to circumvent the Stay Order. To allow appellate review of the Order denying the Discovery Motion, which Plaintiffs filed in violation of the Stay Order, would be to reward Plaintiffs for disregarding the Stay Order. In short, if Plaintiffs are permitted to appeal an otherwise nonappealable order merely by disregarding it, the purpose of the Federal Arbitration Act's restrictive appeal provisions would be substantially undermined. Therefore, the Federal Arbitration Act requires that Plaintiffs' Motion to Appeal be denied.

## II.    PLAINTIFFS ARE NOT ENTITLED TO APPEAL THE DISCOVERY ORDER AS A MATTER OF RIGHT.

Even if the Federal Arbitration Act did not prohibit Plaintiffs from appealing, their Motion to Appeal would still fail. Plaintiffs argue that they are entitled to appellate review of the Discovery Order as a matter of right either because that order qualifies as a final order, or because circumstances exist allowing appellate review of an order that is not final. Both arguments fail.

A.    **The Discovery Order is Not a Final Order, and Therefore Not Subject to Appeal.**

Under 28 U.S.C. § 158(a), Plaintiffs may not invoke the District Court's appellate jurisdiction as a matter of right unless the order being appealed is a final judgment, order, or decree. Generally, "[p]retrial discovery decisions are not 'final decisions' . . . ." New York v. United States Metals Refining Co., 771 F.2d 796, 799 (3d Cir. 1985); *see also* FirsTier Mortgage Co. v. Investors Mortgage Ins. Co., 498 U.S. 269, 276 (1991) (noting that discovery decisions are "clearly interlocutory," and that the "belief that such a decision is a final judgment would *not* be reasonable") (emphasis in original). This holds true whether a discovery decision is issued by a district court or a bankruptcy court. *See* In re Jeannette Corp., 832 F.2d 43, 46 (3d Cir. 1987). Therefore, the Bankruptcy Court's Discovery Order was not a final order, and Plaintiffs are not entitled to an appeal of right under 28 U.S.C. § 158(a)(1).

In the face of these adverse legal standards, Plaintiffs make several attempts to argue that they should nevertheless be entitled to appellate review of the Discovery Order. As set forth below, all of these attempts fail.

B.    **Plaintiffs Rely on a Line of Cases That Are Inapposite Because They Involve Ancillary Proceedings Where Discovery Is the Entire Basis of the Proceeding.**

Plaintiffs' first argument in support of their contention that they are entitled to appellate review as a matter of right relies on a line of cases that is not at all relevant. *See* Motion to Appeal, at 12-13 (citing Cusumano v. Microsoft Corp., 162 F.3d 708, 712 (1st Cir. 1998); Barrick Group, Inc. v. Mosse, 849 F.2d 70, 72 (2d Cir. 1988); Heat & Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1020-22 (Fed. Cir. 1986); Ariel v. Jones, 693 F.2d 1058, 1059 (11th Cir. 1982); Republic Gear Co. v. Borg-Warner Corp.,

8

381 F.2d 551, 554 (2d Cir. 1967)). These cases recognize an exception to the final order rule only in the limited circumstances where a district court is exercising ancillary jurisdiction regarding a proceeding separate from the main proceeding and the order denying a motion for discovery resolves the <u>only</u> matter before the district court. Because there are no further proceedings anticipated in that court, the court's order has been held to constitute a *de facto* final order with respect to that particular ancillary proceeding. *See, e.g.*, <u>Cusumano</u>, 162 F.3d at 712 (allowing appeal where "the order of the district court made a final disposition of the only proceeding in its district growing out of a particular controversy, and the only proceeding pending between these particular parties anywhere") (quoting <u>Horizons Titanium Corp v. Norton Co.</u>, 290 F.2d 421, 424 (1st Cir. 1961)). This exception has been further limited to circumstances where the denial of discovery by a court exercising ancillary jurisdiction would not be reviewable by an appellate court reviewing a final decision in the main proceeding. *See* <u>Barrick Group</u>, 849 F.2d at 72-74 (allowing direct appeal of discovery denial by a court exercising ancillary jurisdiction only where the court exercising such ancillary jurisdiction was geographically outside of the judicial circuit in which the main proceeding was pending).

This line of cases has nothing in common with the present circumstances. Here, the Discovery Order did not resolve the only matter before the Bankruptcy Court involving Plaintiffs and the IFC. To the contrary, the Bankruptcy Court is the very court in which Plaintiffs' claims against the IFC are pending. Therefore, Plaintiffs' reliance on this line of cases is misplaced.

C.    **An Order Denying a Rule 2004 Motion is Not Inherently Final.**

Plaintiffs next argue that the fact that they relied on Federal Rule of Bankruptcy Procedure 2004 and the Bankruptcy Court's equitable powers in support of their Discovery Motion somehow entitles them to immediate appeal of the Discovery Order. This fails for two reasons.

First, Appellate courts reviewing bankruptcy court denials of Rule 2004 examinations have generally found such orders to be interlocutory, not final. *See, e.g.*, Vance v. Lester (In re Vance), 1998 U.S. App. LEXIS 28177, *3-4 (7th Cir. 1998) ("A majority of courts that have considered the issue have held that orders granting or denying Rule 2004 examinations are, like discovery orders, interlocutory.");[8] Hoffenberg v. Cohen (In re Towers Fin. Corp.), 164 B.R. 719, 721 (S.D.N.Y. 1994).

Second, the purported grounds for the Discovery Motion do not change the nature of the Bankruptcy Court's order denying that request—an interlocutory pretrial discovery order. With respect to its interlocutory nature, the Discovery Order is no different than any other pretrial discovery order. The Discovery Motion sought discovery relating to Plaintiffs' claims against the IFC, but Rule 2004 and equitable principles cannot be used for discovery relating to such claims. Rather, Federal Rules of Bankruptcy Procedure 7026 through 7037 provide the exclusive means available to parties in adversary proceedings for discovery with respect to the subject matter of the adversary proceeding. *See, e.g.*, 2435 Plainfield Ave. v. Township of Scotch Plains (In re 2435 Plainfield Ave.), 223 B.R. 440, 455-57 (Bankr. D.N.J. 1998) ("Because the debtor seeks to depose Township officials on issues which are the subject of a pending adversary proceeding, the

---

[8] Copies of all unreported decisions cited herein are attached hereto as Exhibits 6-7.

deposition cannot be conducted pursuant to Rule 2004, but must be conducted pursuant to the Federal Rules of Civil Procedure."); In re Valley Forge Plaza Assoc., 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990) ("[O]nce an adversary proceeding or a particular contested matter is under way, discovery sought in furtherance of litigation is subject to the [Federal Rules of Civil Procedure] rather than the broader bounds of [Rule] 2004."). Therefore, Plaintiffs' attempt to disguise their Discovery Motion as a 2004 motion does not change the fact that the order denying the Motion is an interlocutory order not subject to appeal.

### D. The Collateral Order Doctrine Is Not Applicable to the Discovery Order.

Plaintiffs' argument that the Discovery Order is appealable as a "collateral order" also fails. In fact, it completely disregards black letter Third Circuit law regarding the scope of the collateral order doctrine.

In the Third Circuit, "[i]t is well-established that unless a party is seeking to prevent the disclosure of information on the basis of trade secrets or some traditionally-recognized privilege such as attorney-client or work product, the collateral order doctrine does not permit appeal from discovery orders." ADAPT of Philadelphia v. Philadelphia Housing Auth., 417 F.3d 390, 395 (3d Cir. 2005); see also Powell v. Ridge, 247 F.3d 520, 524 (3d Cir. 2001) ("[T]he collateral order doctrine does not reach appeals of discovery orders 'beyond the narrow categories of trade secrets and traditionally recognized privileges, such as attorney-client and work product.'") (quoting Bacher v. Allstate Ins. Co., 211 F.3d 52, 57 (3d Cir. 2000)). In Bacher, the Third Circuit expressly rejected a request to expand the collateral order doctrine's applicability to discovery orders beyond those involving trade secrets and privileges, finding that the collateral

11

order doctrine should <u>not</u> be applied or expanded on a case-by-case basis. <u>Id</u>. at 57. Accordingly, the Third Circuit has established a bright-line rule preventing the application of the collateral order doctrine to discovery orders except those specifically identified. <u>Id.</u>

Here, the Plaintiffs do not and cannot argue that the Bankruptcy Court's Discovery Order falls within one of the narrow categories to which the collateral order doctrine applies in the Third Circuit.[9] The Discovery Order, which <u>denies</u> discovery, does not require disclosure of trade secrets or privileged material. Therefore, under the bright-line rule established by the Third Circuit, the collateral order doctrine does not permit a direct appeal of the Discovery Order.

## III.    EXTRAORDINARY CIRCUMSTANCES WARRANTING LEAVE TO APPEAL DO NOT EXIST.

In addition to arguing that the Discovery Order is appealable as of right, Plaintiffs' Motion to Appeal also invokes 28 U.S.C. § 158(a)(3) in moving for leave from the District Court to take an interlocutory appeal of the Discovery Order.

Although neither 28 U.S.C. § 158 nor the Federal Rules of Bankruptcy Procedure set forth substantive legal standards governing a motion for leave to appeal, district courts have generally drawn upon the standards set forth under 28 U.S.C. § 1292(b), which govern interlocutory appeals from the district court to the court of appeals. *See* <u>In re Delaware & H. R. Co.</u>, 96 B.R. 469, 472 (D. Del. 1989).

The applicable standard regarding leave to appeal an interlocutory bankruptcy order is as follows:

-----

[9] Indeed, Plaintiffs failed to even cite the well-established rule in the Third Circuit that, with very limited exceptions not present here, discovery orders are not appealable under the collateral order doctrine.

> [A]n interlocutory appeal may be had when the order at
> issue (1) involves a controlling question of law upon which
> there is (2) substantial grounds for difference of opinion
> and (3) when an immediate appeal from the order may
> materially advance the ultimate termination of the
> litigation. Additionally, a court will entertain an appeal
> under section 1292(b) only when an appellant demonstrates
> that exceptional circumstances justify departure from the
> basic policy of postponing review until after the entry of
> final judgment.

Dal-Tile Int'l v. Color Tile, 203 B.R. 554, 557 (D. Del. 1996) (internal citations and

quotation marks omitted). Here, the Discovery Order, by its very nature, cannot meet

these standards.

### A.    The Discovery Order Does Not Involve A Controlling Question of Law.

As a threshold matter, the Discovery Order is not subject to an interlocutory

appeal because it does not involve a controlling question of law. Discovery rulings are

committed to the discretion of the Bankruptcy Court, and "an allegation of abuse [of that

discretion] does not create a legal issue" for purposes of an interlocutory appeal. White

v. Nix, 43 F.3d 374, 377 (8th Cir. 1994); see also Enron Corp. v. JP Morgan Sec., Inc. (In

re Enron Corp.), 2007 U.S. Dist. LEXIS 5856, *8 (S.D.N.Y. Jan. 17, 2007) ("Whether to

grant . . . the opportunity to conduct discovery was a matter that rested within the sound

discretion of the bankruptcy judge, and it does not present a controlling question of

law."); Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1118 n.14 (3d Cir. 1986) ("'[I]t

is difficult to believe that a discovery order will present a controlling question of law.'")

(quoting Wright, Miller & Marcus, Federal Practice and Procedure 2d § 2006). Because

the Discovery Order does not raise a controlling question of law, there is no basis for

leave to appeal that order.

13

**B.    There Are No Grounds, Let Alone Substantial Grounds, for a Difference of Opinion Regarding the Proper Application of Controlling Law.**

To warrant leave to file an interlocutory appeal, the order sought to be appealed must involve legal questions for which there are substantial grounds for a difference of opinion. Here, this is not the case. To the contrary, the grounds for the Bankruptcy Court's decision are indisputable.

As set forth in Section I, *supra*, where an action has been stayed pending arbitration, a trial court may not permit the parties to conduct discovery under the Federal Rules of Civil Procedure. Corpman v. Prudential-Bache Sec., Inc., 907 F.2d 29, 31 (3d Cir. 1990). Moreover, upon referral of an action to arbitration, the discovery procedures available in the arbitration are controlling. *See* In re Board of Directors of Hopewell Int'l Ins. Ltd., 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001).

The transcript of the hearing of the Discovery Motion confirms the indisputable nature of the Bankruptcy Court's decision. During the hearing, the following exchange took place between the Court and Plaintiffs' counsel:

> THE COURT:   Did you have any cases where Courts have allowed 2004 discovery in connection with a pending arbitration?
>
> [PLAINTIFFS]: No.[10]

In ruling on the Discovery Motion, the Court stressed the absence of precedent supporting Plaintiffs' Motion, and stated that the reason for this lack of precedent was that it is implicit in the very nature of a stay that discovery not be allowed during the stay:

> I am not aware, as I asked the Debtor and the Debtor concedes, they are not aware of any cases that have held a Debtor's entitled to discovery under Rule 2004 or any other

---

[10] *See* Exhibit 5, Transcript of April 25, 2007 Hearing, p. 38.

14

> basis while another proceeding is pending, whether it be an adversary or, specifically, an arbitration. And I have not found any case dealing with an arbitration. Instead of seeing this as a novel issue, I think the reason we don't see decisions is that it's implicit in staying a matter . . . that all discovery will be conducted in accordance with the arbitration rules that are applicable to that arbitration.

April 25, 2007 Transcript, at p. 38-39.

Accordingly, as the Plaintiffs conceded at the hearing, and the Bankruptcy Court specifically found, there are no grounds for difference of opinion regarding the availability of Rule 2004 discovery (or any other discovery) during a stay pending arbitration. *See* Bowie Produce Co. v. Magic Am. Cafe (In re Magic Restaurants), 202 B.R. 24, 26 (D. Del. 1996) ("[A] scarcity or void of judicial opinion alone is insufficient to justify an interlocutory appeal."). Substantial grounds to disagree with the Bankruptcy Court's decision do not exist.

### C.     Immediate Appeal of the Discovery Order Would Not Advance the Ultimate Termination of Litigation.

Even if the Discovery Order did involve a controlling question of law upon which there are substantial grounds for difference of opinion, to warrant leave to appeal Plaintiffs would need to establish that an immediate appeal would advance the ultimate termination of the proceedings against the IFC. Here, that is not possible. It is fundamental that appeal of a discovery order such as the Bankruptcy Court's, which denied discovery during a stay of proceedings pending mandatory arbitration, could not possibly advance the termination of the proceedings against the IFC. *See* Wright, Miller & Marcus, Federal Practice and Procedure 2d § 2006, at 82-83 ("Ordinarily it is difficult to believe that . . . an immediate appeal [of a discovery order] will materially advance the termination of the litigation.").

15

**D.    Plaintiffs Have Not Demonstrated Exceptional Circumstances Warranting Extraordinary Interlocutory Review.**

Finally, to warrant an interlocutory appeal of a bankruptcy order, Plaintiffs would also need to demonstrate some "circumstance or reason that distinguishes the case from the procedural norm and establishes the need for immediate review." Bowie Produce Co. v. Magic Am. Cafe (In re Magic Restaurants), 202 B.R. 24, 26-27 (D. Del. 1996). Here, Plaintiffs cannot do so. As has been demonstrated above, Plaintiffs' Discovery Motion was (1) filed in violation of the Stay Order, (2) based on meritless allegations, and (3) indisputably contrary to well-established law. Denial of such a motion hardly qualifies as exceptional circumstances warranting extraordinary interlocutory review.

16

**Conclusion**

In blatant violation of the Bankruptcy Court's Stay Order, Plaintiffs have moved to appeal the Bankruptcy Court's denial of a discovery motion that also violated the Stay Order. Because there are no grounds for Plaintiffs' Motion to Appeal, it must be denied.

Respectfully submitted,

Robert J. Stearn, Jr. (No. 2915)
Lee E. Kaufman (No. 4877)
RICHARDS, LAYTON & FINGER, P.A.
P.O. Box 551
One Rodney Square
Wilmington, Delaware 19899
(302) 651-7700
    - and -

Warren E. Zirkle
McGUIREWOODS LLP
1750 Tysons Blvd., Suite 1800
McLean, Virginia 22012
(703) 712-5000

*Counsel for Defendant International Finance Corporation*

17

# EXHIBIT  1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **KAISER GROUP INTERNATIONAL,** | : | **Case Nos. 00-2263 (MFW)** |
| **INC.,** *et al.,* | : | |
| | : | **(Jointly Administered)** |
| Debtors. | : | |
| | : | |

## AMENDED NOTICE OF AGENDA OF MATTERS SCHEDULED FOR
## HEARING ON THURSDAY, MAY 26, 2005 AT 2:00 P.M. [1]

## CONTINUED MATTERS

1.      Motion Of Claimant Pippin And The Class Of ICT Spectrum Claimants For A Stay Of The De-Registration Of Kaiser Group Holdings Common Stock Pending The Final Disposition Of The Bankruptcy Court's February 2, 2004 Order (Filed: May 6, 2005) (Docket No. 1724)

         Related Documents:

         a.     Memorandum In Support Of Motion Of Claimant Pippin And The Class Of ICT Spectrum Claimants For A Stay Of The De-Registration Of Kaiser Group Holdings Common Stock Pending The Final Disposition Of The Bankruptcy Court's February 2, 2004 Order (Filed: May 6, 2005) (Docket No. 1725)

         b.     Re-Notice of Hearing Regarding Motion Of Claimant Pippin And The Class Of ICT Spectrum Claimants For A Stay Of The De-Registration Of Kaiser Group Holdings Common Stock Pending The Final Disposition Of The Bankruptcy Court's February 2, 2004 Order (Filed: May 16, 2005) (Docket No. 1728)

         Response Deadline: May 19, 2005 at 4:00 p.m
                                (Extended to May 24, 2005 at 4:00 p.m )

         Status: This matters will be heard on May 31, 2005 at 2:00 p.m.

---

[1]    **Parties who are unable to attend a hearing may request telephonic participation by contacting CourtCall toll free by phone (866-582-6878) or by facsimile (866-533-2946) no later than 12:00 p.m. two business days prior to the hearing. When making a request, parties must provide the case name and number, name of Judge, hearing date and time, name, address, phone number of participant, party whom participant represents, and matter on which participant wishes to be heard or whether the participant intends to monitor the proceeding in "listen-only" mode.**

UNCONTESTED MATTERS WITH CERTIFICATE OF NO OBJECTION

2.    Motion for Final Decree Closing The Case of Kaiser Engineers Massachusetts,
      Inc. Nunc Pro Tunc To December 7, 2004 (Filed: April 28, 2005) (Docket No.
      1720)

      Related Documents:

      a.    Certification of No Objection (Filed: May 23, 2005) (Docket No. 1729)

      b.    Proposed Order

Status:  A certification of no objection has been filed and a CNO notebook has been
         submitted to the Court.

MATTERS GOING FORWARD

   **Kaiser Group International Inc., *et al.*, V. Nova Hut A.S. and
   International Finance Corporation  Adv. No. 01-928 (MFW)**

3.    Debtors' Motion to Proceed with Merits Discovery (Filed: June 28, 2002) (Docket
      No. 112)

      Response deadline:    July 17, 2002 at 4:00 p.m.

      Related documents:

      a.    Certification of Counsel in Connection with Debtor's Motion to Permit
            Discovery (Filed: June 28, 2002) (Docket No. 113)

      b.    Debtors' Memorandum of Law in Support of its Motion to Permit Merits
            Discovery (Filed: June 28, 2002) (Docket No. 114)

      c.    Exhibit F to Debtor's Memorandum of Law in Support of its Motion to
            Permit Merits Discovery (Filed: July 3, 2002) (Docket No. 116)

      Responses:

      d.    Memorandum In Opposition to Kaiser International's Motion to Permit
            Merits Discovery Filed: by International Finance Corporation (Filed:
            September 9, 2002) (Docket No. 131)

      e.    Nova Hut's Memorandum of Law in Opposition to Debtors' Motions for
            Expedited and Other Discovery (Filed: August 30, 2002) (Docket No.
            127)

    f.    Reply Brief to Nova Hut's Opposition to Debtors' Memorandum of Law In Support of its Motion to Permit Merits Discovery (Filed: September 18, 2002) (Docket No. 135)

    g.    Reply Memorandum of Debtors In Response to International Finance Corporation's Opposition to Merits Discovery (Filed: September 18, 2002) (Docket No. 136)

Status:   This matter will go forward as to International Finance Corporation only.

4.    International Finance Corporation's Renewed Motion to Stay Further Proceedings Pending Arbitration (Filed: April 12, 2005) (Docket No. 259)

Related Documents:

    a.    Notice of hearing on Oral Argument (Filed: May 17, 2005) (Docket No. 263)

    b.    Defendant International Finance Corporation's Reply To Debtors' Memorandum In Opposition To Renewed Motion To Stay Further Proceedings Pending Arbitration (Filed: May 3, 2005) (Docket No. 262)

Response Deadline April 26, 2005 at 4:00 p.m.

Responses Received:

    c.    Memorandum of Law in Opposition to International Finance Corporation's Renewed Motion to Stay Further Proceedings Pending Arbitration (Filed: April 26, 2005) (Docket No. 261)

Status: This matter will go forward.

**5.    Emergency Motion To Strike Or, In The Alternative, To Continue Hearing On Debtors' Motion To Proceed With Merits Discovery (Filed: May 25, 2005) (Docket No. 265)**

**Related Documents: None.**

**Response Deadline: N/A**

**Status:  To the extent necessary, the plaintiff will be prepared to address this motion at the hearing.**

Mark Minuti (No. 2659)
Donald J. Detweiler (No. 3087)
**SAUL EWING LLP**
222 Delaware Avenue, Suite 1200
P. O. Box 1266
Wilmington, DE  19899
(302) 421-6800

Attorneys for the Debtors

Dated:  May 25, 2005

# Exhibit 2

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              . Case No.  00-2263 (MFW)
                                    . (Jointly Administered)
                                    .
KAISER GROUP INTERNATIONAL,         .
INC., et al.,                       .
                                    . 824 Market Street
                                    . Wilmington, Delaware 19801
                    Debtors.        .
. . . . . . . . . . . . . . . . .   . May 26, 2005
                                    . 2:00 p.m.


TRANSCRIPT OF HEARING
BEFORE HONORABLE MAY F. WALRATH
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtors:            Saul Ewing, LLP
                            By:  MARK MINUTI, ESQ.
                                 GEORGE RAHN, ESQ.
                            222 Delaware Avenue, Suite 1200
                            P.O. Box 1266
                            Wilmington, DE  19899


For IFC:                    Richards, Layton & Finger
                            By:  ROBERT J. STEARN, ESQ.
                            One Rodney Square
                            P.O. Box 551
                            Wilmington, DE  19899


Audio Operator:             Danielle R. Gadson

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**

THE COURT:    Good afternoon.

MR. MINUTI:  Good afternoon, Your Honor.  Mark Minuti from Saul Ewing.  I'm here today for Kaiser Group International, Inc. and its related debtors.  Your Honor, this is our omnibus hearing for May 26th, 2005.  We sent over an amended agenda to Your Honor yesterday.  As Your Honor should have seen, there are really three matters listed that may go forward today, all of which relate to the debtor's litigation against Nova Hut and the IFC.

Those three matters, Your Honor, are the IFC's renewed motion to stay further proceedings pending arbitration, and then the other two matters that are listed are the debtors -- we re-noticed on the agenda a motion to more or less kick-start discovery that we had filed some time ago in this case. And as Your Honor may have seen yesterday, the IFC filed an emergency motion to strike that pleading, or in the alternative to have it continued.  I think both sides agree that what makes sense is for Your Honor to consider the motion to stay because obviously if Your Honor rules in IFC's favor, that will likely moot out the other two matters, so we would suggest we proceed with that.  And if Your Honor holds, as we hope, in the debtors' favor, we can then address the discovery issue.

THE COURT:  All right.

MR. MINUTI:  With that, Your Honor, I'm going to turn the podium over, at this time, to IFC.  It is their motion.

**J&J COURT TRANSCRIBERS, INC.**

# EXHIBIT  3

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              . Case No.  00-2263 (MFW)
                                    . (Jointly Administered)
                                    .
KAISER GROUP INTERNATIONAL,         .
INC., et al.,                       .
                                    . 824 Market Street
                                    . Wilmington, Delaware 19801
                         Debtors.   .
                                    . May 26, 2005
. . . . . . . . . . . . . . . . . 2:00 p.m.


TRANSCRIPT OF HEARING
BEFORE HONORABLE MAY F. WALRATH
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtors:              Saul Ewing, LLP
                              By:  MARK MINUTI, ESQ.
                                   GEORGE RAHN, ESQ.
                              222 Delaware Avenue, Suite 1200
                              P.O. Box 1266
                              Wilmington, DE  19899

For IFC:                      Richards, Layton & Finger
                              By:  ROBERT J. STEARN, ESQ.
                              One Rodney Square
                              P.O. Box 551
                              Wilmington, DE  19899

Audio Operator:               Danielle R. Gadson

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**

59

proceeding pending arbitration of those issues.  Alternatively, I think under discretionary abstention and stay pending arbitration, I would also stay this proceeding because the bulk of the issues, or the predicate facts that need to be decided before the debtors' third amended complaint against IFC should be determined are those that are being arbitrated in Austria.  So, either the parties will start their arbitration now and wait for those -- and stay that arbitration while the Austrian issues get litigated, or the parties will participate in the Austrian arbitration themselves as to those claims.  But I don't think that is for me to decide.  I think it's better that I simply stay this proceeding pending arbitration and let the parties work out where and when that arbitration occurs.  I think to do otherwise would just be a waste of judicial resources.  So, get me a form of order to that effect, if you will.

          MR. ZURKLE:  We'll submit an order, Your Honor.

          MR. MINUTI:  Your Honor, on behalf of the debtor we'd like to see, obviously, the order before it's submitted to chambers.  Obviously, in light of Your Honor's ruling, we don't need to address the discovery matters, and that would then complete our agenda for today.

          THE COURT:  All right.  Thank you.

          MR. MINUTI:  Thank you, Your Honor.

          THE COURT:  We'll stand adjourned.

# EXHIBIT 4

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | **Chapter 11** |
| | ) | |
| **KAISER GROUP INTERNATIONAL,** | ) | **Case No. 00-2263 (MFW)** |
| **INC., et al.,** | ) | |
| | ) | **Jointly Administered** |
| Debtors. | ) | |
| | ) | |

| | | |
|---|---|---|
| **KAISER GROUP INTERNATIONAL,** | ) | |
| **INC., et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Adv. No. 01-928 (MFW)** |
| | ) | |
| **NOVA HUT, a.s., and** | ) | |
| **INTERNATIONAL FINANCE** | ) | |
| **CORPORATION,** | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING DEFENDANT
## INTERNATIONAL FINANCE CORPORATION'S RENEWED
## MOTION TO STAY FURTHER PROCEEDINGS PENDING ARBITRATION

Defendant International Finance Corporation's (the "IFC") Renewed Motion to

Stay Further Proceedings Pending Arbitration, dated April 12, 2005 (the "Motion")

seeks a stay of all proceedings in this matter under § 3 of the Federal Arbitration Act, 9

USC § 3 or, alternatively, for a stay pending the outcome of ongoing arbitration

between ICF Kaiser Netherlands B.V. ("Kaiser Netherlands") and Nova Hut a.s. (k/n/a

ISPAT Nova Hut, a.s.) ("Nova Hut").

Due and sufficient notice of the Motion having been given and no further or

other notice being required; the Court having considered the allegations of the Third

Amended Complaint, the parties' briefing and argument on the Motion; and good and just cause appearing therefore; the Court finds that:

1.    The claims of Kaiser Group International, Inc., et al. ("Debtors") against the IFC in the Third Amended Complaint are premised on the Phase I Agreement and the underlying parties' obligations under that Agreement, which contains an arbitration clause.

2.    Although Debtors are not signatories to the Phase I Agreement, the District Court has held that the Debtors are bound to arbitrate the claims asserted in the Third Amended Complaint against Nova Hut because those claims were based on the underlying contract containing an arbitration clause.

3.    The District Court's analysis likewise applies to the Debtors' claims against the IFC.

4.    The IFC has agreed to arbitrate all claims raised by the Third Amended Complaint.

5.    The bulk of the issues and the predicate facts that need to be determined in deciding the claims of the Third Amended Complaint against the IFC will be determined in the ongoing arbitration between Kaiser Netherlands and Nova Hut (the Vienna Arbitration).

6.    Alternatively, if a mandatory stay pending arbitration were not warranted, discretionary abstention and a stay of all proceedings pending the outcome of the ongoing Vienna Arbitration would be necessary to avoid the waste of judicial resources that would result from trying the same issues in this Court.

2

**IT IS HEREBY ORDERED** that:

1.    The Motion is granted.

2.    Further proceedings in this matter are stayed pending mandatory arbitration of the claims of Debtors Kaiser Group International, Inc., et al. against the International Finance Corporation pursuant to the arbitration provision of the Phase I Agreement between Kaiser Netherlands and Nova Hut.


Dated: ⎧June 29⎫, 2005
       Wilmington, Delaware          UNITED STATES BANKRUPTCY JUDGE


\\COM\515998.2

# EXHIBIT  5

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | . | Chapter  11 |
| | . | |
| Kaiser Group International, | . | |
| Inc., et al., | . | |
| | . | Bankruptcy #00-2263 (MFW) |
| Debtor(s). | . | thru     #00-2301 (MFW) |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

| | | |
|---|---|---|
| Kaiser Group International, | . | |
| Inc., et al., | . | |
| | . | |
| Plaintiff(s) | . | |
| | . | |
| vs. | . | |
| | . | |
| Nova Hut, A.S., et al., | . | |
| | . | |
| Defendant(s). | . | Adversary #01-928 (MFW) |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Wilmington, DE
April 25, 2007
3:00 p.m.

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For The Debtor(s):        Mark Minuti, Esq.
                          Saul Ewing, LLP
                          222 Delaware Ave.
                          Wilmington, DE 19899

                          George E. Rahn, Jr. Esq.
                          Saul Ewing, LLP
                          Central Square West
                          1500 Market St.-38th Fl.
                          Philadelphia, PA 19102

38

interfere with that?  I mean, that's the way I view this.

MR. RAHN:  Okay, well --

THE COURT:  Me granting discovery of claims you may have before them?

MR. RAHN:  I don't believe that's an interference with their rights to handle the case.  It's merely -- it may supplement.  It -- this is a case before this Court.  You haven't washed your hands of it.

THE COURT:  Well, it's been --

MR. RAHN:  You've stayed it, that's true.

THE COURT:  It's been stayed.

MR. RAHN:  Yeah, it's been stayed.  There's no question about it and we're not arguing about that.  We're not -- it's Nova Hut that's arguing about it being stayed, not us.  For them to come in and say, "We want to lift the stay" --

THE COURT:  Well, that's not before me today.

MR. RAHN:  Okay, but that's a -- it is a little bit ironic that they want to lift it just a little bit, just a little bit.  And I'll bet if you -- when Your Honor denies their motion, they'll want to shut it down again.  So -- and that's the situation we're in here today.  The IFC --

THE COURT:  Well, why did you wait 2 years to seek discovery under Rule 2004?

39

MR. RAHN:  Well, frankly, because we wanted to see
what the result of the arbitration was.  We have limited
resources.  We can't -- we have to preserve the estate's
resources, and if -- we wanted to see what the result was.  We
did seek discovery back when we were opposing the Motion for a
Stay.  So it's not as though -- it's not as though we haven't
sought, repeatedly in this Court, discovery.  It's not as
though you can say we've sat on our hands.  Yes, we didn't come
back while the arbitration was going on and seek 2004
discovery.  And it wasn't until the Fall of 2006 that we
discovered this website posting, which, by the way, is not part
of the adversary proceeding.  A claim -- our claim concerning
the impropriety, or a potential investigation of the
impropriety, is not part of the adversary proceeding.  So that
ought to go ahead under any circumstance.

        THE COURT:  But it is implicated by the arbitration.
        MR. RAHN:  Yes.
        THE COURT:  I mean, it's --
        MR. RAHN:  But we're not --
        THE COURT:  It's a matter --
        MR. RAHN:  But --
        THE COURT:  -- for the arbitrators to decide, is it
not?

# EXHIBIT  6

LEXSEE 2007 U.S. DIST. LEXIS 5856

**In re: ENRON CORP., et al., Debtors. ENRON CORP., Plaintiff, -against- JP MORGAN SECURITIES, INC., et al., Defendants. ENRON CORP., Plaintiff, -against- MASS MUTUAL LIFE INSURANCE CO., et al., Defendants.**

**M-47 (GBD), Case No. 01-16034 (AJG), Adv. No. 03-92677 (AJG), Adv. No. 03-92682 (AJG)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2007 U.S. Dist. LEXIS 5856*

**January 16, 2007, Decided**
**January 17, 2007, Filed**

**PRIOR HISTORY:** *Enron Corp. v. J.P. Morgan Secs., Inc. (In re Enron Corp.), 2006 Bankr. LEXIS 3431 (Bankr. S.D.N.Y, Dec. 15, 2006)*

**COUNSEL:** For Enron Corp., Debtor: Brian S. Rosen, LEAD ATTORNEY, Michael P. Kessler, Weil, Gotshal & Manges, LLP, New York, NY; Melanie Gray, Sylvia Ann Mayer, Weil, Gotshal & Manges, LLP, Houston, TX; Frederick W.H. Carter, Venable, LLP, Baltimore, MD; Barry J. Dichter, Cadwalader, Wickersham & Taft LLP, New York, NY; Mark C. Ellenberg, Cadwalader, Wickersham & Taft LLP, Washington, DC; Stephen T. Loden, Diamond McCarthy LLP, Houston, TX; Stacia A. Neeley, Klee, Tuchin, Bogdanoff & Stern LLP, Los Angeles, CA; Michael Schatzow, Venable, Baetjer and Howard, LLP, Baltimore, MD; Martin Sosland, Weil, Gotshal & Manges, LLP, Dallas, TX; Albert Togut, Togut, Segal & Segal LLP, New York, NY; Robert L. Wilkins, Venable LLP, Washington, DC.

For Enron Corp., Unknown: Brian S. Rosen, LEAD ATTORNEY, Weil, Gotshal & Manges, LLP, New York, NY; Peter S. Goodman, Andrews Kurth LLP, New York, NY; Edward Smith, Venable LLP, New York, NY; Michael Earl Comerford, James Tecce, Robert E. Winter, Milbank, Tweed, Hadley & McCloy, LLP, New York, NY; Melanie Gray, Weil, Gotshal & Manges, LLP, Houston, TX.

For Enron Corp., Plaintiff: Venable, LLP, Baltimore, MD; Togut, Segal & Segal LLP, New York, NY; Michael K. Madden, Venable, LLP, New York, NY; Brian S. Rosen, Weil, Gotshal & Manges, LLP, New York, NY; Michael Schatzow, Colleen M. Mallon, Venable, Baetjer and Howard, LLP, Baltimore, MD; Martin Sosland, Weil, Gotshal & Manges, LLP, Dallas, TX; Robert L. Wilkins, Venable LLP, Washington, DC; Frank A. Oswald, Togut, Segal & Segal LLP, New York, NY.

For J.P. Morgan Securities, Inc., Defendant: Mark I. Bane, Ropes & Gray LLP, New York, NY; Steven P. Caley, Kelley Drye & Warren LLP, New York, NY.

**JUDGES:** [*1] GEORGE B. DANIELS, United States District Judge.

**OPINION BY:** GEORGE B. DANIELS

**OPINION**

MEMORANDUM DECISION AND ORDER

GEORGE B. DANIELS, District Judge:

Defendant Merrill Lynch Investment Managers, L.P. ("MLIM") is seeking, pursuant to *28 U.S.C. § 158(a)* and *Rule 8003 of the Federal Rules of Bankruptcy Procedure*, leave to appeal from two orders of the bankruptcy court, both dated August 29, 2005, which denied, without prejudice, MLIM's motions for summary judgment in two companion adversary proceedings entitled *Enron Corp. v. J.P. Morgan Sec., Inc. (In re Enron Corp.) (Adv. Pro. No.: 03-92677), 2005 Bankr. LEXIS 3167* and *Enron Corp. v. Mass Mutual Life Ins. Co. (In re Enron Corp.) (Adv. Pro. No.: 03-92682), 2005 Bankr. LEXIS 3166.* The motions are denied in their entirety. [1]

> 1 MLIM filed a single motion seeking summary judgment in both adversary proceedings. The bankruptcy court addressed the application as two

separate motions, and accordingly issued two orders. In both orders, the bankruptcy court dismissed the causes of action seeking disallowance of any claims filed by MLIM, but denied summary judgment in all other respects. MLIM filed, in this Court, two separate motions for leave to appeal.

[*2] Enron seeks to recover, upon avoidance, four transfers made to MLIM in connection with Enron's alleged prepayment and/or redemption of its own short-term commercial paper on the grounds that they constitute preferential and fraudulent transfers. MLIM maintains that summary judgment in its favor is warranted because, based on the undisputable evidence, Enron cannot establish MLIM's status as a "transferee," which is required for recovery of preferential and fraudulent transfers. *Bankruptcy Code § 550* provides that, with certain exceptions not applicable here, recovery of an avoided transfer is restricted to "the initial transferee of such transfer or the entity for whose benefit such transfer was made; or [] any immediate or mediate transferee of such initial transferee." *11 U.S.C. § 550(a)(1-2).* To be deemed a "transferee," one must, at a minimum, possess dominion over the subject funds and the right to use them for one's own benefit. It is not sufficient that a party is acting only as a conduit through which the funds flow. *Christy v. Alexander & Alexander of N.Y. Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson and Casey). 130 F.3d 52, 57-58 (2d Cir. 1997)* [*3] *(quoting Bonded Fin. Servs., Inc. v. European Am. Bank, 838 F.2d 890, 893 (7th Cir. 1988))*

MLIM contends that, with regard to one of the transactions, it simply acted as an investment advisor to a certain client that held Enron commercial paper. MLIM denies having any involvement as to the remaining three transactions. MLIM alleges that the investment decision resulting in two, of those three remaining transactions, was made by Merrill Lynch Investment Managers, Co. Ltd., a licensed Japanese investment advisory firm ("MLIM Japan"). MLIM asserts that MLIM Japan is a subsidiary of and separate legal entity from MLIM. MLIM argues that the irrefutable evidence it submitted in support of its summary judgment motions, including client agreements and declarations of MLIM and MLIM Japan's present and former employees, demonstrates that it was never a transferee or beneficiary of any of the money that Enron seeks to recover.

The bankruptcy court denied the motions "conclud[ing] that it is premature to consider the motion for summary judgment prior to affording Enron an opportunity to conduct discovery." *J.P. Morgan, 2005 Bankr. LEXIS 3167, at *17; Mass Mut., 2005 Bankr. LEXIS 3166. at *12* [*4] The bankruptcy judge found that "Enron has provided a *Rule 56(f)* affidavit detailing the ef-

forts it made to obtain the facts essential to its opposition and the reasons that it was unsuccessful in those efforts, indicating [MLIM's] resistance to disclosure and Enron's efforts to preserve its rights to discovery with respect to any summary judgment motion." *J.P. Morgan, 2005 Bankr. LEXIS 3167, at *16; Mass Mut., 2005 Bankr. LEXIS 3166, at *12.*

The issue sought to be appealed, as characterized by MLIM, is essentially whether the bankruptcy court erred in failing to grant its motions for summary judgment without further discovery, where MLIM claims: (1) Enron could not articulate any reasonable expectation that discovery would lead to a genuine issue of material fact; (2) no amount of discovery would change the indisputable facts that MLIM was not the intended beneficiary of any of the transfers; and (3) "Enron wasted its opportunity to take such discovery for a period of almost four years?" (Deft.'s Mem. Supp. Mot. for Leave to App. at 26). MLIM "request[s] that the District Court set aside the order of the Bankruptcy Court and grant[,] or remand with instructions to grant[,] MLIM's motion for summary [*5] judgment dismissing all of Enron's claims against it." (Id.).

In seeking leave to appeal an interlocutory order of the bankruptcy court, the movant must establish that the challenged order involves a controlling issue of law to which there exists a substantial ground for difference of opinion, and that an immediate appeal may materially advance the ultimate termination of the litigation. See, *In re Quigley Co, Inc., 323 B.R. 70, 77 (S.D.N.Y. 2005); XO Communs., Inc. v. Start Inv., Inc. (In re XO Communs., Inc.), 2004 U.S. Dist. LEXIS 2879, 2004 WL 360437, at *3 (S.D.N.Y. Feb. 26, 2004); In re WorldCom, Inc., 2003 U.S. Dist. LEXIS 11160, 2003 WL 21498904, at *9 (S.D.N.Y. Jun 30, 2003);* see also, *28 U.S.C. § 1292(b).* Additionally, "the party seeking an interlocutory appeal has the burden of showing exceptional circumstances, to overcome the general aversion to piecemeal litigation and to show that the circumstances warrant a departure from the basic policy of postponing appellate review until after entry of a final judgment." *In re Worldcom, 2003 U.S. Dist. LEXIS 11160, 2003 WL 21498904, at *10* (internal quotation marks and citations omitted); in accord, *Abel v. Shugrue (In re Ionosphere Clubs, Inc.), 179 B.R. 24, 28 (S.D.N.Y. 1995);* [*6] see also, *Koehler v. Bank of Bermuda, Ltd., 101 F.3d 863, 865 (2d Cir. 1996).* MLIM has failed to make the requisite showing in every respect.

A question of law is deemed to be "controlling" if reversal of the order would terminate the action or a determination of the issue on appeal would materially affect the outcome of the litigation. See, *In re 127 John St. Assocs., 2005 U.S. Dist. LEXIS 6729, 2005 WL 911488, at *6 (S.D.N.Y. Apr. 18, 2005)* (citations omitted). MLIM

asserts that the issue sought to be appealed is controlling because reversal of the challenged orders would result in summary judgment being granted in its favor, and hence it would terminate the proceedings against it. MLIM fails to recognize that reversal of the orders is not tantamount to the granting of summary judgment. The bankruptcy court did not rule on the substantive merits of the summary judgment motions. Rather, it denied the motions, without prejudice, so as not to preclude MLIM from renewing its motions after Enron was afforded an opportunity to conduct discovery. Reversal of the orders would merely result in the bankruptcy court having to substantively rule on the motions. Thus, no controlling issue of law [*7] exists in these matters. Moreover, the granting of leave to appeal, at this early juncture, would not materially advance the outcome of the litigation, but on the contrary, would significantly and unjustifiably delay the proceedings.

MLIM further argues that there is a substantial ground for difference of opinion with regard to the subject issue because the bankruptcy court "determined that summary judgment cannot be granted where the party resisting summary judgment had not been afforded an opportunity for discovery and yet numerous other courts in this circuit have granted summary judgment even when no discovery has been taken." (Deft.'s Mem. Supp. Mot. for Leave to App. at 28). No support for MLIM's characterization of the bankruptcy court's holding can be found in the orders themselves. The bankruptcy judge did not make a blanket finding that summary judgment is never available against a party prior to discovery. Rather, the court found that "under the circumstances of this case where the essential facts are within the control of [MLIM] * * * Enron must be afforded an opportunity for discovery concerning those facts that are essential to its opposition . . ." *J.P. Morgan, 2005 Bankr. LEXIS 3167, at *18* [*8] ; *Mass Mut., 2005 Bankr. LEXIS 3166, at *13.* The bankruptcy court's holdings simply determined that these matters did not warrant the exceptional granting of summary judgment prior to discovery. See, *Hellstrom v. United States Dep't of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000)* ("Only in the rarest of cases may summary judgment be granted against a plaintiff

who has not been afforded the opportunity to conduct discovery.").

Whether to grant Enron the opportunity to conduct discovery was a matter that rested within the sound discretion of the bankruptcy judge, and it does not present a controlling question of law. See eg., *Gache v. Balaber-Strauss, 198 B.R. 662, 665 (S.D.N.Y. 1996); Hoffenberg v. Cohen (In re Towers Fin. Corp.), 164 B.R. 719, 721 (S.D.N.Y. 1994); In re Stockbridge Funding Corp., 1993 U.S. Dist. LEXIS 7663, 1993 WL 205225, at *5 (S.D.N.Y. June 8, 1993).* It is not an abuse of discretion for the bankruptcy court to grant an opportunity to conduct discovery prior to deciding the summary judgment motions on their merits.

MLIM alternatively argues that, even in the absence of a substantial ground [*9] for the difference of opinion concerning a controlling question of law, leave to file an interlocutory appeal is still warranted because there are exceptional circumstances justifying immediate review. Specifically, MLIM claims that since it "never should have been sued in the first place[,]" MLIM should not have to incur the costs associated with discovery, but rather "deserves to have a court look at the merits of its motion[s], rather than merely being forced to go along for a very costly ride . . ." (Deft.'s Mem. Supp. Mot. for Leave to App. at 30). MLIM's contention that it is not a proper party defendant in these proceedings, (notwithstanding the prior denial of its motion to dismiss for failure to state a cognizable claim), is not a proper basis for the granting of leave to appeal. Moreover, the anticipated expense of conducting discovery, standing alone, does not warrant a finding of exceptional circumstances.

Defendant's motions for leave to appeal the two orders of the bankruptcy court, dated August 29, 2005, are denied.

Dated: New York, New York

January 16, 2007

SO ORDERED:

GEORGE B. DANIELS

United States District Judge

# EXHIBIT  7

LEXSEE 1998 US.APP. LEXIS 28177

**IN THE MATTER OF: CLARENCE L. VANCE, Debtor. CLARENCE L. VANCE, Appellant, v. THOMAS LESTER, Trustee, Appellee.**

**No. 98-1470**

**UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT**

*1998 U.S. App. LEXIS 28177*

**October 15, 1998 *, Submitted**

\* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and the record. See Fed. R. App. P. 34(a); Cir. R. 34(f).

**November 2, 1998, Decided**

**NOTICE:** [*1] RULES OF THE SEVENTH CIR-CUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: *1998 U.S. App. LEXIS 36109.*

**PRIOR HISTORY:** Appeal from the United States District Court for the Northern District of Illinois, West-ern Division. No. 97 C 50334. Philip G. Reinhard, Judge.

**DISPOSITION:** AFFIRMED.

**COUNSEL:** THOMAS J. LESTER, Trustee - Appellee, Pro se, Rockford, IL.

DANIEL M. DONAHUE, Trustee - Appellee, Pro se, Rockford, IL. USA.

CLARENCE L. VANCE, Debtor - Appellant, Pro se, Pecatonica, IL. USA.

**JUDGES:** Before Hon. KENNETH F. RIPPLE, Circuit Judge, Hon. DANIEL A. MANION, Circuit Judge, Hon. MICHAEL S. KANNE, Circuit Judge.

**OPINION**

*ORDER*

Clarence Vance voluntarily filed for bankruptcy pur-suant to Chapter 7 of the Bankruptcy Code. The bank-ruptcy court entered postdischarge orders disallowing Vance's claimed exemption of his interest in a personal trust and granting the trustee's motion that Vance be re-quired to submit to a *Rule 2004* examination. The district court affirmed both orders, finding that the bankruptcy court retained postdischarge [*2] authority to issue the orders and that the trustee timely had objected to Vance's claimed exemption. We affirm.

In his petition for relief pursuant to *§ 301 of the Bankruptcy Code*, Vance listed as exempt personal prop-erty his interest in the "Clarence Vance Trust." Thomas Lester (the "trustee") filed an objection to Vance's per-sonal trust exemption on June 18, 1997. The creditors met as required by *Rule 2003 of the Bankruptcy Rules* on June 12, 1997. As there were no objections to Vance's discharge, the bankruptcy court entered a discharge order dated July 10, 1997, releasing Vance from all discharge-able debts and enjoining creditors from "instituting or continuing any action to collect the debtor's discharged debts and personal liabilities." At the time of the dis-charge, the trustee's objection to Vance's claimed exemp-tion was still pending. Subsequently, the court entered an August 6, 1997, order disallowing Vance's claimed ex-emption for his personal trust. In a second post-discharge order dated September 2, 1997, the bankruptcy court granted the trustee's motion for an examination of Vance pursuant to *Rule 2004 of the Bankruptcy Rules*. The trus-tee sought in that motion to obtain [*3] tax returns, the trust agreement and other documents relating to Vance's personal trust.

Vance appeals the district court's determination, ar-guing first that the discharge order enjoined the trustee from reaching the purportedly exempt property. He fur-

ther argues that the trustee waived his objection to Vance's claimed exemption by failing to object to discharge. The trustee counters that discharge does not abrogate a trustee's statutory responsibility to administer the bankruptcy estate, and that he properly objected to Vance's claimed exemption.

We review the bankruptcy court's findings of fact for clear error. *In re Paeplow, 972 F.2d 730, 733 (7th Cir. 1992).* The bankruptcy court's conclusions of law are reviewed de novo. *Id.* This appeal exclusively involves questions of law.

Although neither the district court nor the parties address the issue, we first consider whether we have jurisdiction to review the bankruptcy court's order granting a *Rule 2004* examination. A majority of courts that have considered the issue have held that orders granting or denying *Rule 2004* examinations are, like discovery orders, interlocutory. *See In re Towers Fin. Corp., 164 B.R. 719, 720 (S.D.N.Y 1994)*; [*4] *Aetna Cas. & Sur. Co., 154 B.R. 862, 868 (D. Vt. 1993)*; *In re Blinder Robinson Co., 127 B.R. 267, 272 (D. Colo 1991).* This court does not have jurisdiction to consider appeals from interlocutory orders in bankruptcy proceedings, *see 28 U.S.C. § 158(d)*; indeed, we have jurisdiction only in cases where both the bankruptcy court and the district court have entered final orders. *In re Devlieg, Inc., 56 F.3d 32, 33 (7th Cir. 1995)*; *In re Behrens, 900 F.2d 97, 99 (7th Cir. 1990).* Because the order granting the trustee's motion for a *Rule 2004* examination is not a final order, we do not have jurisdiction to consider Vance's challenge to that order. Therefore, the part of Vance's appeal that asks us to review the bankruptcy court's order granting a *Rule 2004* examination must be dismissed for lack of jurisdiction. However, because the order disallowing Vance's claimed exemption is final, we address the merits of Vance's claims as to that order only.

The trustee of a bankruptcy estate is charged with collecting and liquidating the property of the estate to satisfy creditors' claims. *11 U.S.C. § 704* [*5] *(1).* In addition, the trustee is responsible for investigating the financial affairs of the debtor, and opposing discharge "if advisable." *Id. § 704(4), (6).* Nothing in § 704, or the discharge provision, *see id. § 727*, or any other relevant section of the Bankruptcy Code suggests that these duties are terminated or altered by discharge of the debtor.

The district court held that the trustee timely objected to Vance's claimed exemption. Objections to claimed exemptions must be filed within 30 days after the meeting of creditors held pursuant to *Rule 2003.*

*Bankr. R. 4003.* Because the meeting of creditors was held June 12, 1997, the trustee met the prescribed deadline by filing his objection six days later, on June 18. Because the trustee filed his objection to the claimed exemption before the discharge order was entered, the discharge order could not have enjoined the trustee from raising that objection. In any event, the discharge order would not bar the trustee's actions because, by its express terms, the discharge order only prohibits "creditors" from initiating or continuing actions to "collect debts as personal liabilities of the debtor." Non-exempt property belongs to [*6] the estate, not the debtor, and it is the trustee's statutory duty to ensure that exempt property remains in the bankruptcy estate.

Vance's waiver argument is likewise without merit. As the district court recognized, discharge and exemption are governed by two distinct rules that prescribe correspondingly different periods for objections. *Compare Bankr. R. 4003(b)* (objection to exemption must be filed within 30 days after the meeting of the creditors) *with* Bankr. R. 4004(a) (complaint objecting to discharge must be filed within 60 days of the scheduled meeting of the creditors). Exemption and discharge also have different consequences. A Chapter 7 discharge releases the debtor from "all liabilities arising prior to the filing of the bankruptcy petition." *In re Birkenstock, 87 F.3d 947, 950 (7th Cir. 1996).* By contrast, exemptions immunize property which would otherwise belong to the estate from "seizure or attachment for satisfaction of debts incurred prior to the bankruptcy proceeding." *In re Scarpino, 113 F.3d 338, 340 (2d Cir. 1997).* Accordingly, Vance's contention that the trustee was required to object to discharge to preserve his right [*7] to object to the claimed exemptions must fail.

Vance's second contention on appeal is that the bankruptcy court did not have authority to enter the orders after he was discharged from bankruptcy. This argument merits little discussion because discharge of the debtor does not terminate a bankruptcy court's jurisdiction. *See, e.g., 11 U.S.C. § 727(d)* (bankruptcy court may revoke discharge if the debtor has committed a fraud or failed to report the acquisition of property after the petition was filed). Therefore, the bankruptcy court had authority to enter both orders after Vance's discharge.

For the foregoing reasons, Vance's appeal from the bankruptcy court order granting a *Rule 2004* examination is DISMISSED, and the order disallowing Vance's claimed exemption is AFFIRMED.